Good morning. My name is John Rhodes. I'm from the Missoula Office of the Federal Defenders of Montana. I represent Wayne Partin. Because the condition of supervision that's challenged on appeal is defined by 18 U.S.C. section 2256 subsection 2 alone, with no refinement by the district court orally or in writing. It's an overbroad, greater deprivation of liberty than necessary. That's plainly established by this court's decision in Durkee. Well, just a minute. I guess I'm wondering about that. It seems to me you're making the same claims that were made in Reardon and Daniels. And I guess I'm wondering why Nurkee applies to you. Because Reardon and Daniels are the same exact arguments you're making. And they said you're wrong on all of your points. So why has Nurkee changed it? The big difference between Reardon and Daniels, in this case, Your Honor, and Nurkee, is that Reardon and Daniels both reviewed for plain error. And the arguments and issues presented here, where the focus is on the fact that the 2256 subsection 2 definition of sexually explicit conduct is so broad that it sweeps in television shows, movies. Well, just a minute. It didn't quite sweep that in in your case. It didn't seem to me. It seems to me that, let's look at Nurkee. It seemed to me there were two factors that the panel worked on on Nurkee. One was that it didn't limit the condition to adult pornography. And the second was the geographical scope of the condition was far too broad. Now, if I apply that in this particular case, I guess I'm trying to figure out why it applies. Because there was no effort in this case to apply it only to adult porn. And they do have geographical boundaries. We did not challenge what the court's describing as geographical boundaries, the patronage. I agree. Condition because it was limited to establishments where sexually explicit conduct was the primary item of sale. So in that case, Nurkee was irrelevant. So I guess we're back to the first. There was no indication in this case, as there was in Nurkee, that the condition should have been limited to adult porn rather than what it was. And in this case, I don't find that condition. I agree. And that's exactly the problem. Pornography as, well, if that's the problem, and I'm only stopping you to get you to relate. If that's the problem, then it seems to me that Reardon and Daniels are the law. Because Reardon and Daniels apply generally, and it seems to me that unless you're trying to limit to adult porn or you're trying to limit someplace, And I'm having a tough time again. I put B together with Reardon and Daniels, and I'm still trying to see why in your case, Nurkee is any distinguishment. Pornography is more limited than sexually explicit conduct. And that's the problem, is sexually explicit conduct is so broad that it incorporates simulated sexual intercourse, lascivious exhibition of the genitals. So in that instance, I think we've all or most everybody's watched TV shows or movies where there's sexually simulated conduct, yet it's not considered pornographic. Well, but we don't really have that here, do we? I know what Nurkee said, but we really don't have that here. First of all, we have a, if you will, scienter requirement. Because if we read this, what the court said is, shall not knowingly acquire or possess materials. And that wasn't in Nurkee. We have what he should not knowingly do, but it's depicting as defined in 2A1 through 5, 5, 8, 9, and 10. So it does limit it to 5, 8, 9, and 10, which did not in Nurkee. And then it says written stories, visual, auditory, telephonic, electronic media, and programmer services. So again, not Nurkee. Nurkee just says you can't do anything that's in 2256-2. But that limitation here, specifying the subsections, was exactly the overbreath and the greater deprivation of liberty addressed in Nurkee. Because again, you could be reading a book, watching a show, going to a movie, listening to music that isn't pornographic, which was the ultimate bottom line focus in Nurkee, but still involves sexually explicit conduct. And that's why it's overbroad. You could also go to an art museum. But what about the Sientor requirement in this condition? Well, you could, no one would want to. What's the Sientor requirement in Nurkee? Nurkee addresses that factor, Your Honor, because Sientor, as a matter of law, is read into supervision conditions. You could purposely buy a book, and there's great works of literature. You could purposely go watch a movie that has a brief, gratuitous, I don't know if sex scene is the right way to put it, but simulated sexual conduct. So you're acting knowingly, yet you're still violating this condition. The same goes with watching television shows. You could be watching some cable TV show that's acclaimed, and there could be simulated sexual conduct. It's not considered pornographic. You're acting knowingly, and you're in violation of this condition. Is there any suggestion in Nurkee that if they hadn't had the geographic, no, if they'd had some geographic limitation, that the requirements in Nurkee regarding the explicit conduct would not have been approved? Absolutely, Your Honor. The case was reversed, or not reversed. It was affirmed under a modified condition for both of those reasons. It didn't say it's the patronage condition that somehow violates the 2256 definition of sexually explicit conduct. It said there are two problems with this condition, and it eliminated the patronage condition and then limited 2256, which is broader than pornographic, by saying it applies to pornographic materials and therefore is not a greater deprivation of liberty and overbroad. Well, how would your client decide whether something that he sees on television or wherever is sexually explicit conduct or pornographic? What's going to go through his mind? I think that's an incredible predicament, but that's the problem with this condition. He could be watching, and we could sit here, and I think everybody could brainstorm TV shows and movies that aren't considered pornographic, yet he's in violation of the condition. And perhaps that's the wisdom of Nurkee by having the offender work with the probation officer and their sex offender treater to try to figure out where that line is drawn. But I agree that's an amazingly difficult predicament under this condition. Again, he goes to an art museum. If there's naked pictures suggesting even sexually explicit conduct, which would be sexual intercourse as defined under the statute, he's violated this condition. Well, it isn't exactly, because first of all, he doesn't do that. The museum is not in the geographical limitation here. And second of all, he didn't knowingly do it. Think if he went to the museum to see that work of art he did, if he sat down to watch a television show. The museum is not there. We've got adult bookstores, clubs, and Internet sites. That's the patronage condition, Your Honor. That's not the sexually explicit material condition that relates to viewing, acquiring, possessing depictions. Perhaps if we want to say looking at something doesn't somehow transfer possession, viewing, acquiring, but I think arguably it would, regardless we still have the movie, television show, literature, music problem. But for example, counsel, your position is that if this were left in place, your client could not watch the HBO show Game of Thrones. That's a prime example. I think we could list numerous television shows, especially with cable TV shows, where there are sex scenes, but it's not pornographic, and he couldn't watch any of those without violating this condition, which is why it's overbroad and a greater deprivation of the necessary. And again, I went to the library to show the librarians this definition, and the books that I cited in my reply brief, they gave me a list of the ten most banned books. They said every one of those books would violate this condition, including Ulysses, Lady Chowdhury's Lover, Last Exit from Brooklyn. He couldn't have any of those without violating this condition, and that's why it needs to be refined. I was hoping to reserve some time. If I could sit down and have an additional minute or two, I would appreciate it. Thank you, Your Honor. May it please the Court, Jeff Sweet from the United States. The District Court did not abuse its discretion in imposing the special conditions of supervised release. Its decision was procedurally sound and supported by the record. The issue here is the substantive reasonableness of the condition imposed. The defense in its brief discussed why the condition imposed was not reasonably related to the crime. The government, however, disagrees. The District Court had in front of it numerous factors and specifically mentioned not just 3553A in the sentencing guidelines, but that it was the special condition that was designed to advance the goal of protection, and that's what the court is supposed to do, advance the goals of protection, rehabilitation, or deterrence. That's what the special condition was designed to do. And the District Court had more than enough information, the defendant's violent criminal history, the details of the offense, which were set forth in a lengthy sentencing hearing. And the court considered all that and found it necessary and reasonable to impose this condition. The government disagrees. What he ought to avoid and what's permissible. That's the only practical way to handle a matter like this. Yes, Your Honor. You know, even deciding what's pornographic is very difficult. Well, I had a pornography case, so-called. And now, I didn't know what community standards were. I didn't know what my father might object to, so I went out and looked around. And, but, well, I wanted to educate myself in the jury, so I got myself a number of matters that the Supreme Court had held non-pornographic as a matter of law. And my courtroom deputy, who was a retired Marine captain, and I, we watched that. And in about 30 seconds, he jumped up in the clerk's position, looked at me, and said, Judge, are we going to get in trouble over this? And I said, don't worry, it's not pornographic. And I thought it was pretty bad, myself. And, but it was not pornographic as a matter of law. So, down the line, it's very fuzzy. And it keeps shifting and changing. But, if I close your eyes to a number of years back, does it bother young people today? No, not at all. The only word we're going to handle is a certain probation officer. But it's a small restriction. It doesn't amount to a lot. But you do need to make this accommodation. But it's no big deal, one way or another. No big deal. In terms of what accommodation, Your Honor? In terms of following this case. NERCI. NERCI. Yeah. One big day is not going to make a lot of difference. Your Honor, I do agree. I would, however, note that, as Judge Smith noted, there are differences between the instant case and NERCI. The explicit knowing element and, more importantly, the geographic limitation. That was a significant issue for the court in NERCI, is how broad the patronization requirement was. And they said it greatly expanded the scope. And so, throughout NERCI, that was really a theme. I must say there was, I think, one point in NERCI where the court did have issues with the breadth of the condition, even absent the patronization claim, excuse me, the patronization clause. However, that was clearly a focus. The instant case does not have that. It has a much more limited patronization claim. Well, let me ask you about that, counsel. I know in your 28-J letter you recommended that we affirm consistent with NERCI. I think there's something along those lines. And I know the court in NERCI did do that. I know Judge Smith, the other Smith, didn't think that was the best course of action. So let me ask you, if we were to affirm consistent with NERCI, here's my concern. My concern is that a probation officer, there may be a new probation officer, and he gets the terms and conditions, and he's going to find NERCI in violation unless he has read this Mem Dispo or published opinion or then he has to read NERCI. He has to kind of figure everything out, as opposed to simply sending it back where the conditions can be refined. So there's one piece of paper the probation officer has to be familiar with as opposed to effectively side letters modifying the terms. What's the harm in sending it back in that instance? Your Honor, I think it frankly is just partially a matter of efficiency. And when this court modified it in NERCI, you know, I can't say for sure whether that makes it directly to the probation officer, but I would think there's a good chance that it does. I would frankly assume that that would make it to the defendant's file. The probation officer would have that in front of him or her. Likewise, in this case, should the court impose the same limitation in NERCI and affirm, I would assume that the probation officer would have that as well. In fact, I will personally call and make sure they do. And I would say, Your Honor, what do I do with COPE? Before you leave that point, what do I do with COPE? Because it seems to me that COPE is something NERCI panel didn't think about. COPE says the district court should rewrite a condition of supervised release when the challenge is an overbreadth concern. That's exactly what this is. So I think that that particular panel forgot about COPE or didn't know about COPE or didn't care. I mean, it may have been it didn't care. But I'm just trying to see. It seems to me COPE forces me to send it back if I want to overwrite this overbreadth condition, if it is such. And, Your Honor, COPE is not alone. There were other cases that had similar language. I was the one I found. I saw that too, Your Honor. And my response to that is NERCI is more recent. It is directly analogous. And NERCI does cite to Goddard. In Goddard, they, I believe, they construed the two conditions and took note of it. And there's one other similarity, Your Honor. In NERCI, the court emphasized, this court emphasized, that the judge mentioned pornography in his oral findings. And that was sort of a hook that allowed them to do this. I would suggest there's a similar hook in the instant case, and that is the district court judge at the time of resentencing said, when we redrafted these conditions, we did so with a great deal of care and adherence to a series of Ninth Circuit opinions. So what they're saying is, we're trying to follow the Ninth Circuit law. We're trying to track Ninth Circuit law. To the extent that NERCI modifies or updates that law, this court can then bring the Montana condition into compliance or update it as well. So it is similar to NERCI in that sense, Your Honor. And that's it. I feel bad for the district court who's trying to track our law on this subject matter, for having argued the Reardon case as an AUSA. It is difficult to keep track of how these things keep changing. It is a moving area, Your Honor, and I think that's another reason to simply. . . In fact, NERCI noted that. It said everybody struggled with this. So this could be modified and then affirmed as procedurally sound and substantively reasonable. And I can't foreclose, Your Honor. How do we modify it? It's just the way it happened in NERCI, when it doesn't seem to me that this is NERCI's case. I mean, this is a different matter. If I go through significant facts of the criminal history here and the things that came out in those facts, it doesn't seem to me that this condition is outside of what would do good on these facts. And there's nothing in NERCI to suggest that those were the facts. In NERCI, it just had to do with adult porn. That was it. And, Your Honor, my. . . So if I say, apply NERCI, I'm having a tough time how it applies. I must say, Your Honor, this court could find NERCI distinguishable from the instant facts and affirm this condition as written. The government's not suggesting that that's not an option. And so, I'm sorry, so the court's question is how specifically would it be modified? I think the two ways, Your Honor. Well, really, there's one thing that's key, and that is the adult sexually explicit material would be modified such that it would basically have the pornographic definition written in it. And that's what the court did in NERCI. Sexually explicit conduct involving adults defined as explicit sexually, excuse me, basically adding sexually stimulating depictions to modify the adult portion of the sexually explicit material. That's the key modification. There was also a probation officer clause added as well. I think it's the modification of the adult sexually explicit material that was the key modification in NERCI. And if this court does not otherwise distinguish this case from NERCI and affirm as is, that is what the government is requesting, is that it be modified consistent with NERCI and then affirmed as procedurally sound and substantively reasonable. If there's no further questions, I'll conclude. Thank you. Thank you, counsel. Going to this hook argument, a huge difference in this case, in NERCI and BIBO, is that in NERCI and BIBO, the district court judge expressly expressed concerns with the defendant's involvement with adult pornography. And I'll quote from BIBO. As in NERCI, the district court here was concerned that viewing adult pornography would lead BIBO back to viewing child pornography. When I objected to this condition to the district court, the response was, well, Mr. Rhodes, as you know, there was a considerable effort expended by this court, by the district, not just this court, but by the district, to redraft these various special conditions of release. And it was done with a great deal of care in terms of adherence to what had been a series of Ninth Circuit opinions on condition of release. That's before NERCI. The district court had the opportunity to express concerns about Mr. Parton being involved with adult pornography. The district court did not express any such specific concern and gave this district-wide policy response. And the government, in its response brief, says as much when it says, here, there was no ambiguity in the sentencing record. The district court intended to limit Parton's access to sexually explicit materials, even if that means he could not knowingly possess sexually explicit materials of adults. That is not technically pornographic. That's at page 19. There, the government's conceding that this condition violates NERCI because the district court did not want Mr. Parton to have sexually explicit materials, even if the materials are not pornographic. And so I think, Judge Smith, I just directly disagree with you. NERCI controls in this case. And the idea, I do agree with you, that the court should not engage in modifying conditions of release. I'm sorry that you disagree with my question. I'm not sure I put an opinion on this. All right. Sorry. That's too bad. Yeah. Sorry, Your Honor. I read things in there I shouldn't have. That's too bad. But it does create immense confusion if the court starts modifying conditions because the post-Montana condition after NERCI that has been adopted by the district is different than what the court, this court, did at NERCI. So all of a sudden, if Mr. Parton has a condition that differs from every other sex offender under supervision, that creates major practical problems for the probation office. And in terms of efficiency, there's very little efficiency gained relative to the confusion created. What we need to do is these matters need to be handled by the probation office. We need to change the whole system because today, and I think I'll write about this, you know, I've sentenced people with Zumba. And there's a lot of time where, you know, they're adult, part of adult sexually explicit material all over the place. They have the stores where they display it. It's still there. The Zumba? You're shaking your head. Yes. Okay. So we just have to leave that up to the probation officer. We have to get back to the way things were in the past. That's what you're saying. When you get old, the probation officers are social workers. They're not sitting around spending their lives dealing with the sentencing guidelines and become computer operators trying to figure all this out. So we have to go back and change the whole system, the way probation is handled in this country. I agree, Your Honor, and the problem with this condition as written, when my clients ask me what I can and cannot do, it's don't watch TV, don't go to movies, don't go to museums, be careful what books you read, and you've got to work with your probation officer. But right now this condition is overbroad, and it's a greater deprivation of liberty. And that failure in this condition, that illegality, I was just going to point out that condition's illegality is separate and apart from the patronage condition. So the patronage condition that requires primary items of sale does not somehow save the fact that right now Mr. Parton cannot view, possess sexually explicit materials, even if that sexual explicitness is not pornographic. So as written, this condition should be vacated. And we would request that if the court does vacate the condition, that it be remanded for the district court to impose a new condition of supervision. Thank you.
judges: Pregerson, Smith, Owens